Argued January 15; affirmed January 22; rehearing denied
February 26, 1935

WISSERT ET AL. *v.* FARMERS' FIRE RELIEF
ASS'N OF BUTTEVILLE

(40 P. (2d) 63, 41 P. (2d) 1063)

F. C. *Heffron,* of Eugene, for appellants.

E. M. *Page,* of Salem (Keyes & Page, of Salem, and Charles A. Hardy, of Eugene, on the brief), for respondent.

KELLY, J. Defendant is an Oregon mutual fire insurance company. The annual premium is fifty cents per one hundred dollars.

On the 11th day of May, 1932, the defendant issued to plaintiffs its policy of fire insurance for a term of five years upon a dwelling house, its contents, and other buildings belonging to plaintiffs in a sum not exceeding $4,000.

On July 3, 1933, said dwelling house and contents were totally destroyed by fire. Proof of loss was duly given, upon receipt of which defendant denied liability for the reason that plaintiffs had failed to pay a special assessment within the time prescribed by defendant's by-laws.

By inadvertence, a clause, to the effect that loss, if any, should be paid to the mortgagee, was omitted from the policy of insurance.

Plaintiffs instituted this suit to reform said policy by having said inadvertently omitted clause inserted and to recover for the loss sustained by reason of said fire.

By reason of a stipulation of facts and admissions in defendant's answer, the only question herein is whether at the time of said fire plaintiffs' insurance had lapsed by reason of nonpayment of a valid assessment. ·

One of the terms of plaintiffs' said policy is as follows:

"Unpaid premiums and assessments.—It is expressly agreed that this Association shall not be liable for any loss or damage that may occur to the property herein mentioned, while the premium, or any assessment levied, remains past due and unpaid."

■ Plaintiffs challenge the validity of the assessment in question, and call attention to the minutes of the meeting at which defendant's board of directors took action upon it. This occurred on July 29, 1932, and, omitting the names of those present and the date, the entry in said minutes is as follows:

"On motion made and seconded and carried, it was agreed to levy a special assessment of 40 cents per hundred on all insurance in force on above date."

Plaintiffs argue that this is not an assessment, but merely a notation of an agreement to levy one.

We construe the above quoted entry to be an official record that a motion to levy a special assessment of 40 cents per hundred on all defendant's insurance, then in effect, was made, seconded and carried.

■ Plaintiffs also urge that the minutes of the meeting, at which the assessment was levied, should state

the necessity therefor. They argue that there are three grounds which, under Article XIII of defendant's by-laws may justify an assessment, namely, (1) carrying on the association's business; (2) to repay borrowed money, and (3) to create a reserve fund; and, inasmuch, as the by-laws specify these grounds one or more of them must be shown by the minutes to be the basis of the assessment.

To this point, plaintiffs cite the case of *Stubbins v. State Farmers Mutual Insurance Co., of Missouri,* (Mo. Ap.) 229 S. W. 407. In that case, it appears that section 20 of defendant's by-laws expressly provided that the order of an assessment should state the items of losses and expenses. In the instant case, no such provision is made in defendant's by-laws.

Plaintiffs also cite *Johnson v. Farmers Mutual Fire Insurance Company of Kent County,* 110 Mich. 488 (68 N. W. 299, 64 Am. St. Rep. 360). There, defendant's by-laws provided that in case of fire the directors should meet within ten days after the secretary had been informed in writing by the owner of the property burned, said meeting to be at or near the place where the property burned; and that at this meeting the board of directors should ascertain the amount of loss and determine a sum proper to be raised as a surplus fund, and should proceed to make an assessment roll embracing the loss ascertained, the expenses incident thereto and the sum to be raised as a surplus fund. The court held that these provisions require action by the board in all essential particulars to the extent of determining the necessary steps to be taken in making the assessment, or, at least, formally adopting the same at a meeting of the board after the performance of the necessary clerical work. In the case at bar, we are not confronted with any such by-laws.

No form or mode of making an assessment is prescribed by defendant's by-laws and, hence, no formal record thereof was necessary: Vol. 3, Cyc. of Ins. Law (Couch) p. 1914, § 595c, citing *Backdahl v. Grand Lodge A. O. U. W.*, 46 Minn. 61 (48 N. W. 454); *Bay State M. F. Ins. Co. v. Sawyer*, 12 Cush, (Mass.) 64.

The defendant's records upon which the assessment in question was based are briefly summarized by Mr. Terharr, the secretary of defendant, who testified that in 1931 there were 132 losses totaling $106,853.86, while in 1930 there were 83 losses totaling $57,826.01; and that the losses during the years 1930, 1931 and 1932 were very much in excess of the income.

Upon being asked by the court as to the condition of the company at the time it levied the assessment of July 29, 1932, Mr. Terharr testified thus:

"A. The condition at that time of the records, there was quite a few losses outstanding and we also had borrowed a good deal amount of money from an affiliated—not affiliated but from a Hopgrowers Fire Relief Association, which had to be paid.

The Court: Q. Was that money borrowed to pay losses?

A. It had been, yes sir.

The Court: Q. Did you have enough money on hand at the time you levied this assessment in 1929 to repay this money and to pay the losses without levying an assessment?

A. Not without the assessment.    *    *    *

Q.    *    *    *    In order to meet the outstanding obligations of the company, losses, loans and so forth was it necessary to levy an assessment in that amount? (Referring to the assessment of July 29, 1932.)

A. They had to levy an assessment in order to repay the money that was borrowed. And meet the losses that were outstanding.

Q. In the amount in which the assessment was levied?

A. In the amount—well, the assessment also was levied to repay those losses and to bring the reserve back in condition again as it had been before the excessive losses occurred.''

There is nothing in the record tending to refute or modify this testimony.

■ Plaintiffs insist also that the assessment of July 29, 1932, was the second assessment levied by defendant during the year 1932, and that only one valid assessment could be made each year.

Article XIII of defendant's by-laws is as follows:

''Immediately after any loss is adjusted, the Board of Directors shall pay the same from money on hand. In case there is not sufficient money on hand, the Board of Directors is hereby empowered to borrow, on account of this corporation, enough money to pay such loss or losses. The Board of Directors shall be empowered to levy one assessment each year, for economical reasons, for the purpose of carrying on the association's business, to repay all money borrowed, and to create a reserve fund. The secretary shall notify each member by mail, of the assessment and the amount thereof charged to him, which amount must be paid to the secretary within 60 days. If not so paid, the insurance will be suspended without further notice. The Association shall then proceed to collect the assessment. When the assessment is paid the insurance will be reinstated in full force.''

The article of defendant's by-laws, above quoted, authorizes but one assessment each year of the character and for the purposes therein stated.

To support this claim that two assessments were levied during the year 1932, plaintiffs call attention to the following testimony of Mr. C. J. Terharr, who was secretary of defendant:

''The Court: Q. Do you claim there was an assessment in 1932, which was not paid?

A. July 29, 1932, yes. * * *

The Court: Q. Did you give notice of the assessment?

A. Yes.

Mr. Heffron: Q. Now, in 1932 you had given all the policyholders notice of their assessments besides that.

A. Yes.

Q. And this was a special assessment?

A. They got notice of the regular and the special assessment.''

Later, this witness referred to an annual assessment and a special assessment in 1932.

We hold that the record does not disclose more than one assessment in 1932.

■ A final sum payable periodically, subject to no change of amount or of date of payment during membership, although denominated an assessment in the company's by-laws, is rather a premium: 32 C. J. Insurance, pp. 1214 and 1215, § 362, note 27, citing *Smith v. Brown,* 75 Hun. 231 (27 N. Y. S. 11).

The record appears to be plain that each year the fixed annual premium of 50 cents per hundred was charged against the policyholders. This charge was the one to which witness Terharr referred as a regular assessment, and which the attorney for the defendant denominated an annual assessment. We are unable to concur in the view that it constituted an assessment within the meaning of Article XIII of defendant's by-laws. The affirmative testimony is to the effect that the assessment of July 29, 1932, is the only assessment defendant had ever levied. There is nothing in the record to overcome that testimony.

For these reasons, the decree of the circuit court is affirmed.

Campbell, C. J., and Belt and Rossman, JJ., concur.

Petition for rehearing denied February 26, 1935.

ON PETITION FOR REHEARING
(41 P. (2d) 1063)

■ KELLY, J. In a petition for rehearing, plaintiffs contend that the charge of fifty cents per hundred authorized by Article VIII of defendant's by-laws is restricted to full terms of five years. We are unable to find anything in the by-laws so restricting it.

It is true that the term of the policy issued to plaintiffs is five years. It is also true that $20 only is referred to therein as the premium. As to this policy, if the $20 is to be taken as the premium, the record is barren of anything indicating that a second assessment was ever levied against it; and, therefore, plaintiffs' cause fails.

■ We think, however, that there is nothing in defendant's by-laws inhibiting an annual premium charge of fifty cents per hundred for insurance. As we construe the testimony upon which plaintiffs rely to support their contention, that there were two assessments in one year, it discloses that it was defendant's practice to make such annual charge. The fact that it was referred to in the testimony as an assessment did not change its character from that of a premium to that of a special assessment.

■ We think that when the distinction between a regular, stated assessment and an uncertain, special assessment is borne in mind, the reference in the policy to further assessments, which plaintiffs were to pay, is comprehensive enough to include both additional premium assessments of fifty cents per hundred authorized by said Article VIII and the special assessment authorized by Article XIII of defendant's by-laws.

The petition for rehearing is denied.